UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMIGOS BRAVOS, a nonprofit corp.,
and NEW MEXICO CITIZENS FOR
CLEAN AIR AND WATER, a nonprofit
corp.,

        Plaintiffs,

        v.                                  CIVIL NO. 99-327 DJS/RLP

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for an Award of Litigation Costs filed July 17, 2001 (Docket No. 46). Pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, this case has been assigned upon the consent of the parties to a Magistrate Judge for final disposition. Briefing was complete on the instant motion on August 17, 2001 and the parties submitted supplemental authority on the issues on October 11, 2001 and October 17, 2001.

This action is a suit pursuant to the Clean Water Act, 33 U.S.C. §§1251-1387 brought under the citizen suit provision located at 33 U.S.C. §1365(a)(2). Plaintiffs contend that the Molycorp Molybdenum mine located near Questa, New Mexico is illegally discharging pollutants such as acids and heavy metals from waste rock dumps located along the Red River. Plaintiffs further contend that those waste rock dumps constitute point sources of pollution and that Molycorp does not have a

1

National Pollution Discharge Elimination System (NPDES) permit permitting the discharges. They sought a declaration that Defendant has violated a non-discretionary duty to take enforcement action regarding the discharge of pollutants from the Molycorp waste rock dumps and asked that this Court order Defendant to either issue Molycorp a compliance order or bring a civil action against the company for the illegal discharge of pollutants. In addition, Plaintiffs requested that the Court require Defendant to either issue an NPDES permit to Molycorp for the discharges or prohibit the discharges.

On November 8, 1999 this Court entered a Memorandum Opinion and Order (Docket No. 39) granting Defendant's Motion to Dismiss and dismissing this action with prejudice on the basis of the doctrine of collateral estoppel. Plaintiffs appealed that dismissal. On January 3, 2001, the Tenth Circuit Court of Appeals reversed this Court's decision and remanded the matter for further proceedings. However, on March 19, 2001 the Tenth Circuit Court of Appeals vacated and withdrew that decision based upon the conclusion that the case had become moot during pendency for rehearing. The Order of the Circuit Court of Appeals remanded the action to this Court with instructions to vacate its Judgment (Docket No. 40) and its Memorandum Opinion and Order granting Defendant's motion to dismiss. That Order further noted that this Court is not divested of jurisdiction to make a determination on whether Plaintiffs are entitled to an award of litigation costs, including attorney's fees, under §505(d) of the Clean Water Act. The instant motion for such costs followed.

The Clean Water Act provides that "[t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate...."33 U.S.C. 1365(d). Plaintiffs contend that they are a substantially

2

prevailing party in this litigation and that, as such, they are entitled to their attorneys' fees and costs. In determining whether it is appropriate to award attorney's fees in a case where there has been no adjudication on the merits, such as this one, the claimant must demonstrate that it was the catalyst behind the change in the defendant's conduct. Center for Biological Diversity v. Norton, 262 F.3d 1077, 1080 (10th Cir. 2001). To prevail under the catalyst test, the claimant must show: 1) that the lawsuit is causally linked to securing the relief obtained and 2) that the defendant's conduct in response to the lawsuit was required by law. Powder Basin Reservoir Council v. Babbitt, 54 F.2d 1477, 1486 (10th Cir. 1995).

Defendant argues that the Supreme Court rejected the catalyst test as a permissible basis for a judicial award of attorney's fees under a fee-shifting statute in Buckhannon Board & Care Home v. West Virginia Dept. of Health and Human Resources, 531 U.S. 1004, 121 S.Ct. 1835 (2001). In Buckhannon, the Supreme Court held that the catalyst theory cannot be invoked to support an award of attorney's fees under either the Fair Housing Amendments Act of 1988 ("FHAA") or the Americans with Disabilities Act of 1990 ("ADA"). Buckhannon, 121 S.Ct. at 1843. The attorney fee provisions in both the FHAA and the ADA authorize the court to award fees to the "prevailing party." §42 U.S.C. 3613(c)(2) (FHAA); §42 U.S.C. 12205(ADA). The Supreme Court held that the term "prevailing party" is a legal term of art and does not "include[ ] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 121 S.Ct. at 1838 (quoted in Center for Biological Diversity, 262 F.3d 1080, n. 2).

Plaintiffs assert that the Tenth Circuit Court of Appeals distinguished Buckhannon in Center for Biological Diversity based upon the different statutory authorization for fee shifting in the

3

Endangered Species Act. The Endangered Species Act provides that "[t]he court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." §16 U.S.C. 1540(g)(4). However, <u>Center for Biological Diversity</u> did not examine the applicability of the catalyst test for awarding attorney's fees under the Endangered Species Act because neither party to the litigation raised the issue. <u>Center for Biological Diversity</u>, 262 F.3d at 1080, n. 2.

While that language in the Endangered Species Act allows courts more discretion to award attorney's fees than the limitation of such awards to "any prevailing or substantially prevailing party" found in the Clean Water Act[1], this Court agrees with Plaintiffs that the language authorizing fee awards to a "substantially prevailing party" indicates an expansion of the courts' authority to award fees beyond that at issue in <u>Buckhannon</u>. The Supreme Court made it clear that a "prevailing party" is one which has obtained a judgment on the merits or a court ordered consent decree, rather than someone who has merely obtained a desired change in behavior through their lawsuit. <u>Buckhannon</u>, 121 S.Ct. at 1838. As earlier held by the Supreme Court, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-12 (1993). However, neither holding helps lower courts to define a "substantially prevailing party". Necessarily, such a litigant must have achieved less than a "prevailing party". How much less has not been defined in the wake of the ruling in <u>Buckhannon</u>. This Court concludes that the catalyst

---

[1] Prior to amendment in 1987, the Clean Water Act, 33 U.S.C. §1365(d), also allowed an award of attorney fees to "any party".

4

test is an appropriate measure to determine whether the Plaintiffs were a "substantially prevailing party" under the fee shifting provision of the Clean Water Act.

As noted earlier, to prevail under the catalyst test, Plaintiffs must show: 1) that their lawsuit is causally linked to securing the relief obtained and 2) that the defendant's conduct in response to the lawsuit was required by law. Plaintiffs argue that the chronology of events in this case demonstrates that their suit caused Defendant to issue an NPDES permit to Molycorp for discharges of pollutants into the Red River from its Questa, New Mexico mine. Plaintiffs assert that their 1995 suit against Molycorp caused Defendant to conduct an evaluation of waste rock discharges from the mine. That evaluation resulted in a 1998 report determining that those discharges stemmed from "point sources", which is a conclusion contrary to Defendant's earlier position. Plaintiffs further argue that Defendant took no action upon that conclusion until after this suit was filed in 1999. They contend that Defendant issued an NPDES permit for the discharges in December, 2000 and, by doing so, capitulated to Plaintiffs' claims. This suit was rendered moot when the permit took effect on February 1, 2001.

Defendant points out that at the time it issued the NPDES permit it had won a dismissal of the action in this Court and the Tenth Circuit Court of Appeals had not ruled on Plaintiffs' appeal. Consequently, it contests the causal connection between this suit and the issuance of the NPDES permit. Defendant also argues that Plaintiffs fail the second portion of the catalyst test because its actions were not required by law. Defendant has argued that the issuance of an NPDES permit is discretionary from the outset of this litigation and that contention was one of the bases of its motion to dismiss, although it was not decided by this Court or by the Tenth Circuit Court of Appeals. In examining the issue to determine whether Plaintiffs are entitled to costs and attorney's fees, this Court

5

agrees that Defendant's action was not required by law. Consequently, Plaintiffs cannot prevail on the second part of the catalyst test even if they satisfy the first portion of the test.

As noted by the Tenth Circuit Court of Appeals in its withdrawn January 3, 2001 opinion, there is no controlling Tenth Circuit or Supreme Court Authority on the issue of whether the EPA's enforcement duties under the Clean Water Act are discretionary or mandatory. Amigos Bravos v. Environmental Protection Agency, 236 F.3d 621, 623 (10th Cir. 2001) vacated 6 Fed.Appx. 719, 2001 WL 267206 (10th Cir. Mar. 19, 2001). However, the Ninth Circuit Court of Appeals recently examined the question in Sierra Club v. Whitman, 268 F.3d 898 (9th Cir. 2001). That Court noted that the traditional presumption is that an agency's refusal to investigate or enforce is within the agency's discretion, unless Congress has indicated otherwise. Sierra Club, 268 F.3d at 902 (citing Heckler v. Chaney, 470 U.S. 821, 838 (1985)). It further found that 33 U.S.C. §1319(a)(3) does not mandate enforcement by the EPA even after a finding of a violation. Id. at 903. The contention that such enforcement is mandatory under that statute is at the heart of Plaintiffs' suit here. Complaint, ¶56. This Court agrees with the reasoning of the Ninth Circuit Court of Appeals in Sierra Club v. Whitman that enforcement mechanisms under the Clean Water Act are discretionary. See Sierra Club, 268 F.3d at 904-5; see also, Dubois v. Thomas, 820 F.2d 943, 947-48 (8th Cir. 1987); see also Sierra Club v. Train, 557 F.2d 485, 491 (5th Cir. 1977).

Count II of Plaintiffs' Complaint asserts that Defendant does not have discretion to exempt persons who discharge pollutants from the requirements of the Clean Water Act, citing 33 U.S.C. §1342(a)(1) and 33 U.S.C. §1311(a). Complaint, ¶58. Plaintiffs then assert that Defendant failed to fulfill a non-discretionary duty under the Act to either issue a permit for Molycorp's illegal discharges under 33 U.S.C. §1342 or prohibit the discharges pursuant to 33 U.S.C. §1311. 33 U.S.C. §1311(a)

6

provides that "[e]xcept in compliance with this section ... the discharge of any pollutant by any person shall be unlawful". 33 U.S.C. §1342(a) provides that "...the Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section 1311(a) of this title....".

Plaintiffs cite Natural Resources Defense Counsel, Inc. v. Costle, 568 F.2d 1369, 1375 (D.C. Cir. 1977), for the proposition that there is no agency discretion to exempt a known illegal discharge. While this is true, the statutes in question do not impose a duty on the EPA. In fact, the failure of the EPA to issue a permit for a point discharge does not exempt the *polluter* from liability for violating the Clean Water Act. Driscoll v.Adams, 181 F.3d 1285, 1289-90 (11th Cir. 1999) cert. denied 529 U.S. 1108 (2000). The statutes provide no exception to that liability where no permit is available. Id. at 1290 (citing Hughey v. JMS Development Corp., 78 F.3d 1523, 1530 (11th Cir.)[2] cert. denied 519 U.S. 993 (1996), and Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3d 546, 559 (5th Cir.) cert. denied 519 U.S. 811 (1996). It would not be logical to hold polluters liable for point source discharges made without a permit if the EPA was required to permit all such discharges. Under that circumstance, the fault would be the EPA's for failing to permit the discharge, rather than the polluter's for allowing effluent into the nation's waters. The obligation placed upon those creating point source discharges to either stop such discharges or to obtain a permit is inconsistent with a mandatory duty of the Agency to issue permits. The portions of the Clean Water Act relied upon by

---

[2]In Hughey, the Eleventh Circuit Court of Appeals recognized a narrow exception to the absolute prohibition upon point source discharges in the absence of a permit where (1) compliance with such a standard is factually impossible; (2) no NPDES permit covering such discharge exists; (3) the discharger was in good-faith compliance with local pollution control requirements that substantially mirrored the proposed NPDES discharge standards; and (4) the discharges were minimal. Hughey, 78 F.3d at 1530.

Plaintiffs in Count II of their complaint does not create an action required of Defendant by law.

Given that conclusion, and assuming that Plaintiffs' suit was causally linked to Defendant's action in issuing an NPDES permit for the discharges from the Questa, New Mexico Molycorp mine waste rock piles, Plaintiffs' request for costs and attorneys fees fails when examined under the liberal catalyst test for awarding such fees because Defendants' action was not required by law.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for an Award of Litigation Costs is denied.

---

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**